UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NO. 6:17-36-CHB-HAI

UNITED STATES OF AMERICA                                         PLAINTIFF

V.        UNITED STATES'S SENTENCING MEMORANDUM

RODNEY SCOTT PHELPS                                              DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The United States hereby submits to the Court its position and arguments in aid of the sentencing of Defendant Rodney Scott Phelps (Phelps), currently scheduled for July 28, 2020. The Defendant has recently filed objections to the Presentence Report (PSR). However, these objections are months overdue, the original PSR having been filed months ago. Defense counsel has represented to the Court that the reason for the late filing is the Defendant's persistent failure to communicate with counsel. The Government objects to these late objections. In the event that the Court considers the objections, the Government responds to them as follows.

Only one objection affects the guideline sentence calculations. That is the assessment of the two level increase for obstruction of justice. This

assessment is appropriate because the Defendant committed perjury during his trial testimony. The Court will recall that during his testimony, Phelps denied making false representations to the victims. He denied ever stating that he had access to a large sum of money in the Phelps Family Trust. He denied that he ever stated he was related to the Morton Salt Company family. He denied that he ever assisted in the preparation of false financial statements or other documents. The Court can easily determine by a preponderance of the evidence that the testimony of victims and Jason Castenir, to the contrary, is more credible and that the Defendant committed perjury. The enhancement for obstruction is appropriate.

The remaining issues for consideration are those factors set forth in 18 U.S.C. § 3553. This statute lists at least eight different, sometimes overlapping, considerations the Court must consider in determining the appropriate sentence. All of the Government's concerns and arguments fit under the two factors set out in subsection 1(a): the nature and circumstances of the offense and the history and characteristics of the defendant.

*The nature and circumstances of the offense*.

The crimes involved in this case are extremely serious. Phelps and Castenir very methodically defrauded numerous individuals in a long-

running and multi-faceted pattern of deception.  When the FBI and the Commodities Futures Trading Commission (CFTC) began looking at the defendants, the two were in the midst of an ongoing series of fraudulent business ventures.  Phelps and Castenir opportunistically moved from one scheme to another.  The Belizian oil concession scheme, the debenture scheme, and the casino scheme were bookended by other ventures, bearing similar indicia of fraud, and an overlapping list of victims, such as the Treaty oil deal and the First Columbia Gold scheme.  Consistent throughout was Phelps's use of the fake biography to attract the attention of investors to garner their trust and sense of security.  The fake multi-million dollar Phelps Family Trust, with its vast financial experience, amplified by talk of being heir to the Morton Salt fortune, provided investors with a false sense of security and confidence.

    The defendants raised over two million dollars based on hyped or non-existent business ventures.  When investors lost their initial investment, they were often lured into yet additional ventures by promises that they would be made whole, thus throwing good money after bad.  Even after Phelps and Castenir parted ways, Phelps used the ill-gotten trust of some of the investors to scam several of the G-Net investors out of their tire sealant business association with Noorez Devraj.  He then scammed Devraj out of the

goodwill of his product and the use of his website domain. Despite Phelps's protestations, his crimes were predatory and persistent. They warrant significant punishment.

### *The history and characteristics of the defendant*

To his credit, Scott Phelps does not have a significant criminal history. Nothing in his background foreshadowed his involvement with Castenir in committing blatant fraud. Nevertheless, there is something in his character that is very troubling and very predictive of future criminal conduct. That is, his brazen and defiant dishonesty and contempt for the legal system.

It starts, as mentioned, with the fake biography that was the determinative factor by many investors in deciding to give their money to him. Victim after victim recounted to investigators and at trial the similar conversations they had with the Defendant about the Phelps Family Trust and its experiences and assets. He even used a false story of great wealth to deceive the landlord in Nashville, Ken Smith, by providing him with a falsified bank deposit record.

To any rational observer, Phelps was exposed as an imposter. Phelps's false biography was refuted in many different ways. He later admitted in a deposition that there was no large family trust. The government proved that documents he submitted showing large balances in a trust account were fake

and altered. His parents had no knowledge of the large trust or any connection with the Morton Salt legacy.

But, rather than admitting the deception, Phelps denied it, despite overwhelming evidence to the contrary. He claimed that he never made those representations to investors and that they were lying against him. He said that any documents purporting to show his wealth were created by Jason Castenir. He also claimed any email that referenced his wealth, business experiences, and resources were faked and sent from his account by Castenir to frame him for the crime. Any promotional documents containing false biographical information about him were similarly a part of Castenir's sole deception, he said. Phelps apparently does not understand or fathom how ridiculous and unbelievable are his disclaimers and denials. That reflects a serious character flaw that should be reflected in the sentence imposed.

This character flaw is also present in Phelps's transparent attempt to detach his name from any of his assets or businesses, placing his home, businesses, and other assets in the names of his children or trusts. His efforts to distance himself from assets presents difficulties in locating items of value to be liquidated in order to repay the victims for the money they lost.

Phelps's character is further revealed by his contempt of the legal system. The pretrial and trial proceedings in this case reflect Phelps's

disregard for the Court, Probation and Parole (Probation), the prosecution, witnesses, and his own lawyers. He has been through three lawyers and is currently crosswise with his current appointed counsel. That appears to be the result of his unreasonable demands and unwillingness to listen to reason. (*See*, DE 118, Defendant's Pretrial Memorandum, discussing relationship between counsel and Defendant).

Phelps engaged in a protracted effort to thwart and delay the trial in this case. (DE 49, Response to Fourth Motion to Continue)(describing the long history of delay in the case)(DE 76, Response to Fifth Motion to Continue)(DE 96, Response to Sixth Motion to Continue). He failed to appear at a status conference, instead travelling to Knoxville to see a physician, without even notifying his attorney. (DE 55, Criminal Minutes: Status Conference). Phelps lied to Probation about operating a new business requiring modifications to the terms of his release. (DE 74, Criminal Minutes). He failed to provide financial information as required by Probation and this Court. (DE 78, Motion to Revoke)(DE 80, Order issuing warrant). He continues this contemptuous practice now by failing to provide financial information to Probation for use in preparing the PSR. Most recently, he caused yet another continuance of his sentencing due to his failure to communicate with defense counsel.

The Court will recall Phelps's in-court visible and audible antics and demonstrative disgust for the victim witnesses when they testified at trial, prompting, at one point, the dismissal of a disturbed juror following an *in camera* hearing. Phelps's testimony, especially the cross-examination, was belligerent, threatening and completely contemptuous of the process–as well as being transparently false. Phelps's trial conduct here is similar to that in the deposition taken by the CFTC during the investigation, portions of which were read into evidence at this trial. Therein, he was evasive, combative, dismissive and uncooperative.

The sentence in this case must be sufficient to promote respect for the law, provide just punishment, and to protect the public from future misconduct by the Defendant. Accordingly, a sentence at the upper end of the guideline range is appropriate.

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:  s/ Kenneth R. Taylor
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-6874
FAX (859) 233-2747
Ken.Taylor@usdoj.gov

        s/ Kathryn M. Anderson
        Assistant United States Attorney
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4885
        FAX (859) 233-2747
        Kathryn.Anderson@usdoj.gov

CERTIFICATE OF SERVICE

On July 20, 2020, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record.

        s/ Kenneth R. Taylor
        Assistant United States Attorney