UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:17-CR-036-CHB-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| RODNEY SCOTT PHELPS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on Defendant Rodney Scott Phelps's Motion for Permission to Travel [to] Help Care for Elderly Parents, [R. 368], and Emergency Second Motion [R. 374 (Motion)]; [R. 374-1 (Addendum)], which the Court construes as motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release." The United States responded in opposition to the first motion, and likewise construed Phelps's motion as one for compassionate release. [R. 370]. Phelps replied [R. 372], and the matter is ripe for review. These are Defendant's fourth and fifth motions for compassionate relief, and the Court will deny them for the same reasons the Court denied his previous motions. [R. 306]; [R. 309]; [R. 350].

The Court has outlined the procedural posture and nature of Phelps's crimes in its previous orders and will not do so again. *See* [R. 306]; [R. 309]; [R. 350]. Following a jury trial, Defendant Phelps was convicted of thirteen federal fraud offenses on September 10, 2019. *See* [R. 1]; [R. 157]. As mentioned, since his conviction, Phelps has serially filed motions for compassionate release. Phelps filed his first motion on August 19, 2021, just three months after entering BOP custody (the Court generously delayed his reporting date due to the COVID-19 pandemic). [R. 297]. The Court denied the motion on November 2, 2021. [R. 306]. Four months later, on March

1

23, 2022, Phelps filed his second motion for compassionate release, [R. 308], which the Court also denied, [R. 309]. Five months later, on August 8, 2022, Phelps filed a third motion, arguing his chronic medical conditions, including new medical ailments, warrant release. [R. 320]. The Court, again, thoroughly considered his claims before denying that motion. [R. 350].[1] His previous motions rested on claims that his serious, debilitating medical conditions warrant release. His current motions pivot, claiming his parents are experiencing health deterioration and he is needed to provide care for them. [R. 368]; [R. 374].

In his Motion for Permission to Travel [to] Help Care for Elderly Parents, [R. 368], Phelps seeks permission "to travel every weekend to Loveland, Ohio to care for his elderly parents," including for "haircuts, physical therapy, and doctor[']s appointments[.]" [R. 368, p. 1]. The Court construes the motion as a fourth motion for compassionate release because Phelps remains in the Bureau of Prisons' custody, having been transferred to home incarceration on June 7, 2023 under the CARES Act, Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), to serve the remainder of his sentence. *See United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020) ("The CARES Act expands the power of the Bureau of Prisons to 'place a prisoner in home confinement' as an alternative to compassionate release."). In his Emergency Second Motion, Phelps similarly requests permission "to travel Cincinnati, Ohio, to help care for elder parents" and an ailing sister. [R. 374]. The United States responded, outlining the "pattern of [Phelps's] litigious efforts to delay incarceration or win release from prison…" [R. 370, p. 2]. The government argues the latest motions fail because Phelps failed to exhaust his administrative remedies. *Id.* at 4–5. The government goes on to address the merits, urging that Phelps has presented no extraordinary and compelling reasons for a

---

[1] The Court observes that Phelps also filed a Motion to Vacate under 28 U.S.C. § 2255, [R. 310], which the Court denied, [R. 364].

reduction and, and even if he had, the § 3553(a) factors preclude release. *Id.* At 5–8. Phelps replied, noting his "many major medical issues," and largely describing matters wholly unrelated to compassionate release. *See generally* [R. 372]. His Emergency Second Motion includes an Addendum stating that, unfortunately, his mother recently passed away. [R. 374; R. 374-1]. While the motions describe unfortunate circumstances involving Phelps's family members, his motions fail for all the reasons discussed in the Court's previous orders denying compassionate release. *See* [R. 306]; [R. 309]; [R. 350].

In his most recent motion, Phelps also seeks the appointment of counsel. [R. 374, p. 4]. Like his requests for compassionate release, Phelps has filed numerous motions to appoint counsel. *See* [R. 356]; [R. 362]; [R. 366]. Each time, Magistrate Judge Ingram thoughtfully considered Phelps's request and denied his motion. *See* [R. 357]; [R. 363]; [R. 367]. Phelps has, once again, cursorily requested that he be appointed counsel for purposes of pursuing compassionate release. There is no constitutional or statutory requirement to appoint counsel where, as here, a defendant moves for post-conviction relief. *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016); *see also United States v. Webb*, 565 F.3d 789 (11th Cir. 2009) (per curiam) (collecting cases); *United States v. Daniels*, No. 5:19-CR-66, 2023 WL 6519273, at *1 (W.D. Ky. Oct. 5, 2023). Instead, the Court may appoint counsel if doing so is in the interest of fairness. *See United States v. Ryerson*, No. 3:09-CR-66-TAV-CCS-1, 2020 WL 3259530, at *2 (E.D. Tenn. June 16, 2020). Where an underlying motion for compassionate release will fail, appointing counsel would be futile. *Id.* (citing *United States v. Johnson*, Nos. 15-6413/16-5346 2016 WL 10704239 (6th Cir. Nov. 21, 2016) (declining to decide whether defendant was entitled to counsel in proceedings under § 3582(c)(2) because "independent review of the record reveal[ed] no issues of arguable merit" but noting that "[h]istorically, there has been no such

3

right")). Because, as explained herein, there are no arguable issues of merit, the Court will decline to appoint counsel. *See United States v. Prieto*, No. 3:19-CR-142-RGJ, 2022 WL 17718422, at *1–2 (W.D.Ky. Dec. 15, 2022); *Daniels*, 2023 WL 6519273, at *1.

Turning to the government's first argument, Phelps has failed to exhaust his administrative remedies before filing the motion, which is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833–35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions."). The government has invoked the condition, [R. 370, pp. 4-5], and the record contains no argument or evidence from Phelps that he exhausted his administrative remedies prior to filing his latest motions. This alone is grounds for denial of his motions.

But even if he had exhausted his administrative remedies, Phelps's motions otherwise fail. The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3582(c) provides that:

> The court *may not* modify a term of imprisonment once it has been imposed *except that*—
>> (1) In any case—
>>> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that*—
>>>> (i) *extraordinary and compelling reasons warrant such a reduction . . .*

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act of 2018 (FSA), Pub. L. No. 115–391, 132 Stat. 5194, only the director of the Bureau of Prisons (BOP) could move for a sentence reduction under § 3582(c). 18 U.S.C. § 3582(c)(1)(A) (2017); *United States v. Jones,* 980 F.3d 1098, 1104 (6th Cir. 2020). However, under the FSA, courts may now consider a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). Exhaustion by one of the two means listed is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833–35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), the statute requires the Court to undertake a three-step test in reviewing compassionate-release motions. *Jones*, 980 F.3d at 1107–08. At step one, the Court must "find" whether "extraordinary and compelling reasons" warrant a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the Court must "find" whether a reduction in the sentence is "consistent with applicable policy statements issued by the Sentencing Commission." *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i). At step three, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

5

In reference to step two, the Sentencing Commission in 2006 issued its policy statement in § 1B1.13 of the United States Sentencing Guidelines and the application notes to that section. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 (2006). However, the Sixth Circuit previously held that § 1B1.13 is inapplicable to compassionate-release motions filed by the prisoner (as opposed to motions filed by the Director of the Bureau of Prisons). *Jones*, 980 F.3d at 1109–11; *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Consequently, in cases where the defendant filed a motion for compassionate release, federal courts were permitted to "skip step two of the § 3582(c)(1)(A) inquiry and [had] full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. However, the United States Sentencing Commission recently amended the policy statement at U.S.S.G. § 1B1.13 to, among other things, clarify that the amended policy statement applies to defendant-filed motions. *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023). The amended policy statement became effective on November 1, 2023. *Id.* As mentioned, that amendment extends the revised policy statement's applicability to include defendant-filed motions, like the ones currently before the Court. *See id.*; U.S.S.G. § 1B1.13(a) (effective Nov. 1, 2023); *United States v. Clark*, 5:21-cr-84-1, 2023 WL 8374528, *2 (N.D. Ohio Dec. 4, 2023) (explaining that the policy statement now applies to 18 U.S.C. § 3582(c)(1)(A) motions brought by inmates); *Randall v. United States*, No. 4:03 cr-00922-TLW, 2023 WL 8242547, *1 (D. S.C. Nov. 28, 2023) (same).

Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984

F.3d at 519. Of course, when granting a compassionate-release motion, the district court must address all three steps in its analysis. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

With these standards in mind, the Court will now turn to the substance of Defendant's motions and will deny the motions at step three. That is, even if Phelps met the first and second steps of the compassionate release test—meaning, if the Court found that "extraordinary and compelling" circumstances exist and that a reduction is consistent with applicable Sentencing Commission policy statements—the Court, for the fourth (and fifth) time, finds that the § 3553(a) factors preclude a sentence reduction. The Court has thoroughly reviewed (again and again) the briefs and the factual record in this case in light of the § 3553(a) sentencing factors (and their purpose), which include in part: the nature and circumstances of the offense; the Defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities. § 3553(a)(1)–(7); *see also* Jones, 980 F.3d at 1112–16 (discussing the district court's obligation to weigh the § 3553(a) factors and provide specific factual reasons for its decision that furnish a thorough factual record for review). This Court need not "specifically articulat[e]" every single § 3553(a) factor as part of its analysis. *Jones*, 980 F.3d at 1114. Rather, the record "as a whole" (the original sentencing proceeding and the modification proceeding) must confirm the district court considered the "pertinent" factors. *Id.* at 1115.

This Court has, once again, thoroughly reviewed the sentencing proceedings in this case, along with the parties' arguments and submissions related to the current motions and is convinced

that release is not warranted under the statutory factors for the same reasons outlined in its previous

motions:

> First, the "nature and circumstances of the offense" weigh against release. §
> 3553(a)(1). Defendant orchestrated a large, complex, multi-million dollar fraud
> scheme involving numerous victims. [Presentence Report (PSR), pp.3-8]. He and a
> co-conspirator defrauded both sophisticated and unsophisticated investors out of
> millions of dollars with persistent, false representations concerning their business
> experience and expertise, background, and the source of Defendant's alleged
> wealth (that he was heir to the Morton Salt fortune). Id. The Court considered
> Defendant's "history and characteristics," at the sentencing hearing, noting his
> significant health issues, his lack of a criminal record, and family and community
> support, and sentenced him to the very bottom of his Guideline range. [R. 214]. The
> Court took into consideration Defendant's positive characteristics in fashioning his
> sentence. Turning to the other factors, as noted, the Court sentenced Mr. Phelps to
> 108 months imprisonment, the bottom of his Guideline range of 108-135 months.
> [PSR, p. 23]. At this point in time, Mr. Phelps has been incarcerated for a mere 7
> months of his 108-month sentence. Release at this point would not "reflect the
> seriousness of the offense, []promote respect for the law, and []provide just
> punishment for the offense." § 3553(a)(2). Indeed, granting the relief requested
> would undercut the dual goals of promoting respect for the law and providing just
> punishment. The Court thoroughly reviewed all the § 3553(a) factors at
> Defendant's original sentencing hearing and has done so again. The same factors
> that warranted a sentence of 108 months weigh against a further sentence reduction.
> Further, the Court carefully considered the mitigating factors in Mr. Phelps's
> background (including his medical conditions) and sentenced him to the bottom of
> the Guideline range. Release at this point would fail to deter criminal conduct or to
> serve the other relevant statutory factors. Upon consideration of all the § 3553(a)
> sentencing factors, release is not warranted.

[R. 306, pp. 6–7]. More recently, in fact just several months ago, the Court again explained

why compassionate release for Phelps is precluded under the relevant factors:

> This Court has thoroughly reviewed the sentencing proceedings in this case, along
> with the parties' arguments and submissions related to the current Motion (and
> previous motions), and is convinced that release is not warranted under the statutory
> factors, for the very same reasons the Court denied Defendant's previous motions:

>> First, the "nature and circumstances of the offense" weigh against
>> release. § 3553(a)(1). Defendant orchestrated a large, complex,
>> multi-million dollar fraud scheme involving numerous victims.
>> [Presentence Report (PSR), pp.3-8]. He and a co-conspirator
>> defrauded both sophisticated and unsophisticated investors out of
>> millions of dollars with persistent, false representations concerning

their business experience and expertise, background, and the source of Defendant's alleged wealth (that he was heir to the Morton Salt fortune). Id. The Court considered Defendant's "history and characteristics," at the sentencing hearing, noting his significant health issues, his lack of a criminal record, and family and community support, and sentenced him to the very bottom of his Guideline range. [R. 214]. The Court took into consideration Defendant's positive characteristics in fashioning his sentence. [R. 306, p. 6].

These observations remain true today. Further, the Court considered all mitigating factors at Defendant's original sentencing hearing (including his significant and complicated medical history at the time) and sentenced him to the least sentence possible that still honored the purposes of sentencing under 18 U.S.C. § 3553(a). Even considering any new medical diagnosis of MDS or other ailments, further winnowing of the sentence at this time would offend the purposes of punishment. Currently, Defendant has served only a fraction (about 25%) of his original sentence. Release at this point would not "reflect the seriousness of the offense, []promote respect for the law, and []provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). Indeed, granting the relief requested would undercut the dual goals of promoting respect for the law and providing just punishment. See also [R. 306, pp. 6-7]. The Court thoroughly reviewed all the § 3553(a) factors at Defendant's original sentencing hearing and has done so again (and again). The same factors that warranted a sentence of 108 months, the very bottom of his Guideline range, weigh against early release.

[R. 350, pp. 7–9]. Nothing has changed under the § 3553(a) rubric.

For all these reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant Rodney Scott Phelps's Motion for Permission to Travel Help Care for Elderly Parents [**R. 368**] is **DENIED**.

2.    Defendant Rodney Scott Phelps's Emergency Second Motion **[R. 374]** is **DENIED**.

This the 26th day of February, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

9